IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TARA L. PLAINTIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-00982 |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | JUDGE CAMPBELL |
| and | ) | MAGISTRATE JUDGE |
| ROBERT C. HELSON | ) | NEWBERN |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ROBERT C. HELSON, | ) | |
| | ) | |
| Counter-Plaintiff/Cross- | ) | |
| Plaintiff/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TARA L. PLAINTIFF, | ) | |
| | ) | |
| Cross-Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Cross-Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE BANK OF NEW YORK | ) | |
| MELLON TRUST COMPANY, N.A. | ) | |
| f/k/a THE BANK OF NEW YORK | ) | |
| TRUST COMPANY, N.A., as successor | ) | |
| to JP MORGAN CHASE BANK, N.A., | ) | |
| as Trustee for RESIDENTIAL ASSET | ) | |
| MORTGAGE PRODUCTS, INC., | ) | |
| MORTGAGE ASSET-BACKED PASS- | ) | |
| THROUGH CERTIFICATES SERIES | ) | |
| 2005-RP3, | ) | |

|                          | )
| **Third-Party Defendant.** | )

# MEMORANDUM

Pending before the Court is The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A., as successor to JP Morgan Chase Bank, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3 ("BNYM") and Ocwen Loan Servicing, LLC ("Ocwen")'s Motion to Dismiss Amended Complaint, Cross-Claim, and Third-Party Complaint. (Doc. No. 34). Tara L. Keen and Robert C. Helson have filed responses in opposition (Doc. Nos. 40, 43), and BNYM and Ocwen have replied. (Doc. No. 47). For the reasons discussed below, the Court **GRANTS** BNYM and Ocwen's Motion to Dismiss Amended Complaint, Cross-Claim, and Third-Party Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's First Amended Complaint

Plaintiff and Cross-Defendant Tara L. Keen's wrongful foreclosure case was removed to federal court on June 27, 2017. (Doc. No. 1). The Court granted Plaintiff's request for leave to amend her complaint, and Plaintiff filed her First Amended Complaint ("FAC") on February 15, 2018. (Doc. No. 27).

Plaintiff alleges that she and her late ex-husband purchased the house at 1235 Brandy Hollow Road, Portland, Tennessee (the "Home") as joint tenants with rights of survivorship in 1998. (*Id.* ¶ 6). At the time of purchase, both Plaintiff and her then husband signed the Deed of Trust and were collectively identified as "Borrower." (*Id.* ¶ 10). The Deed of Trust also provides, "[a]ny Borrower who co-signs this Security Interest but does not execute the Note: (a) is co-signing

this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property . . . [and] (b) is not personally obligated to pay the sums secured by this Security Instrument." (Doc. No. 34-2 at 5). Unlike the Deed of Trust, only Plaintiff's ex-husband signed the mortgage note (the "Note"), executed on the same day for $84,575 and referenced in the Deed of Trust. (Doc. No. 27 ¶ 10; Doc. No. 34-1 at 5).

On May 9, 2011, Plaintiff and her ex-husband executed a modification agreement (the "Modification Agreement"), which listed her as a borrower and modified the mortgage on the home and the Note secured by the mortgage. (Doc. No. 27-1 at 2). The Modification Agreement also provided, "all terms and provisions of the Loan Documents, except as expressly modified, remain in full force and effect . . ." (*Id.* at 6).

Plaintiff and her husband divorced in October 2011, and she was granted a 100% title interest in the Home in the final divorce decree. (Doc. No. 27 ¶ 14). Her husband later executed a quitclaim deed for his interest in the Home, naming Plaintiff as the Grantee. (*Id.*). In 2013, Plaintiff's ex-husband passed away. (*Id.*). Ocwen was the mortgage loan servicer at that time. (*Id.* ¶ 9).

In early 2016, Plaintiff experienced financial hardship and became behind on her mortgage payments. (*Id.* ¶ 17). Around March 2016, Plaintiff contacted Ocwen about potential options for avoiding foreclosure. (*Id.*). During this and future conversations, Ocwen told Plaintiff she was not a borrower on the loan and would only be treated as an authorized third-party. (*Id.* ¶ 18).

On April 14, 2016, Ocwen sent an information packet to Plaintiff's deceased ex-husband about mortgage assistance. (*Id.* ¶ 20). Plaintiff completed and submitted the request for mortgage assistance. (*Id.* ¶ 21). On June 6, 2016, Plaintiff received a letter from Ocwen addressed to her ex-husband stating that her request for mortgage assistance had been approved for a Home

3

Affordable Modification Program ("HAMP") modification. (*Id.* ¶ 24). The letter further explained that the modification first required the completion of a trial period plan before a permanent modification could be offered. (*Id.*). Plaintiff accepted the terms of the trial payment plan, signed the trial period plan as the borrower, and began making monthly trial payments as required. (*Id.* ¶ 25).

In early September 2016, Plaintiff received a letter from Ocwen addressed to both her and her ex-husband, explaining that an issue with her identity had been discovered which prevented confirmation of the loan's eligibility for a HAMP modification. (*Id.* ¶ 26). Plaintiff promptly faxed the requested documents to Ocwen to verify her identity. (*Id.* ¶ 27). Upon receipt of her documents, an Ocwen representative told Plaintiff to stop making payments under the trial payment plan and informed her that she would need to assume the mortgage loan from her deceased ex-husband to be eligible for the assistance she had been granted in June. (*Id.* ¶ 28).

Ocwen sent Plaintiff a "family transfer package" to facilitate the transfer of the mortgage loan to herself. (*Id.* ¶ 29). Plaintiff completed the forms and collected the requested documents, which she sent to Ocwen multiple times. (*Id.*). Plaintiff never received confirmation that she had assumed the loan. (*Id.* ¶ 30). However, in October 2016, she received a new letter with mortgage assistance resources, similar to the letter she received in April, with a new application. (*Id.*).

Plaintiff continued to contact Ocwen about how she could avoid foreclosure. (*Id.* ¶ 31). Ocwen representatives repeatedly told her that she needed to fill out and return the "family transfer package" to assume the loan, which she did several times. (*Id.* ¶ 32). Ocwen never acknowledged Plaintiff as the borrower or that she had assumed the loan. (*Id.* ¶ 34).

Ocwen proceeded with the foreclosure process in Spring 2017. (*Id.* ¶ 35). When Plaintiff learned of the scheduled foreclosure sale, she again contacted Ocwen, who sent her another letter with mortgage assistance resources and information. (*Id.* ¶¶ 36, 38).

On April 5, 2017, the Home was sold to Robert C. Helson for $85,063. (*Id.* ¶ 39). On April 7, 2017, Plaintiff received a letter from Ocwen, which stated she was not eligible for a loan modification through HAMP, Ocwen's Shared Appreciation Modification Program, or Ocwen's Proprietary Modification Program. (*Id.* ¶ 40).

Based on these allegations, Plaintiff brings the following claims against Ocwen: (1) wrongful foreclosure resulting from violations of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X; (2) wrongful foreclosure resulting from violations of the Home Affordable Modification Program ("HAMP"); (3) breach of contract; (4) breach of contract for failure to follow HAMP provisions; (5) promissory estoppel; (6) fraud; (7) negligent misrepresentation; (8) wrongful foreclosure resulting from failure to recognize assumption under the Garn-St. Germain Depository Institutions Act ("Garn-St. Germain"); (9) breach of contract for failure to recognize assumption; and (10) infliction of emotional distress. (*Id.* at 10-22). Ocwen moves to dismiss all claims in the FAC. (Doc. No. 34).

**B. Helson's Counterclaim, Crossclaim, and Third-Party Complaint**

On February 13, 2018, Helson filed a counterclaim against Keen, cross-claim against Ocwen, and third-party complaint against BNYM. (Doc. No. 24). In addition to some of the allegations above, Helson alleges Plaintiff vacated the Home as required by a court order on September 7, 2017. (Doc. No. 24 ¶ 15). Since taking possession of the Home, Helson has incurred expenses in maintaining the Home and has been unable to sell or rent it due to the current litigation. (*Id.* ¶ 16).

Helson brings the following claims against BNYM and Ocwen: (1) negligent misrepresentation; (2) declaratory judgment stating that the Trustee's Deed be in full force and effect, Helson is the rightful owner of the Home, BNYM and Ocwen have no interest in the Home, and Helson is entitled to receive loss rental income and/or depreciation cost incurred; (3) breach of seisen/rescission; (4) quantum meruit/unjust enrichment/detrimental reliance; and (5) breach of contract implied in fact. (*Id.* at 6-12).[1] BNYM and Ocwen move to dismiss all of Helson's claims against them. (Doc. No. 34).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6), permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" to establish the plausibility required to "unlock the doors of discovery." *Id.* at 678.[2]

---

[1] Helson also brings declaratory judgment, cloud on title, and quantum meruit/unjust enrichment/detrimental reliance claims against Keen. (Doc. No. 24 at 7-8, 10-11).

[2] Although Ocwen moves to dismiss part of the FAC based on Rule 12(b)(1), the Supreme Court has made clear that Article III's standing requirements are separate and distinct from statutory

## III. ANALYSIS

### A. Plaintiff's First Amended Complaint

#### 1. Wrongful Foreclosure Resulting from Violations of RESPA and Regulation X (Count 1)

By its plain language, civil liability under RESPA and Regulation X is limited to "borrowers." *See* 12 U.S.C. § 2605; 12 CFR § 1024.41(a); *see also Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (holding that plaintiff failed to establish the prudential requirements for standing because she was not a borrower); *Washington v. Green Tree Servicing LLC*, Case No. 1:15-cv-354, 2017 WL 1857258, at *3 (S.D. Ohio May 5, 2017) (holding that RESPA and Regulation X apply only to borrowers). Yet, neither RESPA nor Regulation X define the term "borrower." *See* 12 U.S.C. § 2602; 12 C.F.R. §§ 1024.2, 1024.31.

Ocwen argues that Count 1 should be dismissed because Plaintiff, who was not personally obligated to repay the Note, was not a "borrower" under RESPA and Regulation X and therefore cannot bring a plausible claim. The Court starts with the statutory term "borrower" and interprets its ordinary meaning at the time Congress enacted RESPA. *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (starting with the key statutory term and interpreting its ordinary meaning at the time Congress enacted the statute); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004) ("[T]he proper inquiry focuses on

---

interpretation considerations, which determine whether a "particular class of persons ha[s] a right to sue under [a] substantive statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). The question whether plaintiffs have a cause of action is a merits issue that is "analytically distinct from the question whether a federal court has subject-matter jurisdiction." *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011). If a plaintiff lacks statutory standing—in other words, does not have a cause of action—the proper course is to dismiss for failure to state a claim. *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016). Accordingly, the Court will construe BNYM and Ocwen's argument related to Plaintiff's statutory standing under RESPA as falling under Rule 12(b)(6) and not Rule 12(b)(1).

the ordinary meaning of the [statutory term] at the time Congress enacted it."). At the time RESPA was enacted, Black's Law Dictionary defined "borrower" as "he to whom a thing is lent at his request." *Black's Law Dictionary* (4th ed. 1968).[3]

The Court next examines case law on the issue of whether an individual who is not obligated to repay the note is a "borrower" under RESPA. The Court is unaware of Sixth Circuit precedent on the issue. However, the majority of courts that have addressed whether individuals who do not have an obligation on the note are "borrowers" under RESPA have held that they are not.[4] This Court follows the majority of courts in finding that "borrowers" under RESPA must have signed the loan or otherwise assumed obligations on the loan.

---

[3] The common English dictionary definition of "borrower" at the time of RESPA's enactment does not provide guidance on the issue here. *See Webster's Third New International Dictionary* 256 (1971).

[4] *See, e.g.*, *Johnson v. Ocwen Loan Servicing*, 374 F App'x 868, 873-74 (11th Cir. 2010) (holding that daughter who claimed interest in property through a quitclaim deed from her mother lacked standing under RESPA because she was not an borrower or otherwise obligated on the Ocwen loan); *Nelson v. Nationstar Mortg. LLC*, No. 7:16-CV-00307-BR, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) ("A number of federal courts have held that only individuals who execute the promissory note are 'borrowers' with standing to bring a RESPA claim . . . Because plaintiff did not sign the promissory note and has not assumed the loan, she is not a borrower under RESPA."); *Naylor v. Wells Fargo Home Mortg., Inc.*, No. 3:15-CV-116-RJC, 2016 WL 55292, at *6 (W.D.N.C. Jan. 5, 2016) ("Plaintiff is not a borrower . . . in the contested transaction, rather Plaintiff's husband is the sole borrower. Plaintiff did not sign the Note, and she was not a party to the loan at issue. Accordingly, Plaintiff lacks standing to assert a RESPA claim."); *Davis v. Wells Fargo, N.A.*, No. 2:16-CV-00890-JAM-AC, 2016 WL 7116681, at *12 (E.D. Cal. Dec. 6, 2016), *report and recommendation adopted sub nom. Davis v. Wells Fargo Bank, N.A.*, No. 2:16-cv-00890-JAM-AC, 2017 WL 729541 (E.D. Cal. Feb. 23, 2017) ("Defendant is correct that at the time it acquired the loan and at the time plaintiff allegedly sent a QWR, she was not a party to the loan and was thus not a 'borrower' within the meaning of RESPA."); *Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900, 909 (S.D. Ohio 2015) (dismissing wife's Regulation X claims where husband was the "sole borrower" on the note); *Sharp v. Deutsch Bank Nat. Trust Co.*, Civ. No. 14-CV-369-LM, 2015 WL 4771291, at *6 (D.N.H. Aug. 11, 2015) (dismissing RESPA claim for lack of standing where plaintiff did "not allege that he was a borrower on the loan, and indeed, the promissory note does not bear his signature"); *Green v. Cent. Mort. Co.*, Case No. 14-cv-04281-LB, 2015 WL 5157479, at *5 (N.D. Cal. Sept. 2, 2015) (finding that plaintiff, who obtained property subject to mortgage as a result of her parents' death, did not

This interpretation is consistent with the ordinary meaning of the term when RESPA was enacted. In addition, RESPA specifically speaks of the duties mortgage loan servicers owe to borrowers but says nothing about the duties owed to some others involved in real estate transactions, such as individuals who have signed the deed of trust but are not borrowers on the loan. *See Sharp v. Deutsch Bank Nat. Trust Co.*, Civ. No. 14-CV-369-LM, 2015 WL 4771291, at *4 (D.N.H. Aug. 11, 2015). Furthermore, RESPA applies only to "federally related mortgage loan[s]," 12 U.S.C. § 2602(1), which suggests that a "borrower" would be a named borrower on that loan. *See Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787, 796 (E.D. Pa. 2014).

In the present case, the FAC alleges that only Plaintiff's ex-husband signed the Note. (Doc. No. 27 ¶ 10; Doc. No. 34-1 at 5).[5] The allegations do not contain any additional information obligating Plaintiff on the loan. Although Plaintiff signed the Deed of Trust and is identified as a "Borrower" therein (Doc. No. 27 ¶ 10), the Deed of Trust specifically provides, "[a]ny Borrower who co-signs this Security Interest but does not execute the Note: (a) is co-signing this Security

---

become a borrower under RESPA simply upon obtaining title to the property); *Aldana v. Bank of Am., N.A.*, Case No. CV 14-1646-GHK (FFMx), 2014 WL 12577145, at *2 (C.D. Cal. May 2, 2014) (holding that plaintiff was not a borrower under RESPA because she was not the borrower on the loan, did not assume obligations under the loan, and only had legal title to the property); *Singh v. Wells Fargo Bank N.A.*, No. CIV 2:11-cv-0401-GEB-JFM (PS), 2011 WL 2118889, at *4 (E.D. Cal. May 27, 2011), *report and recommendation adopted*, No. 2:11-CV-0401-GEB-JFM, 2011 WL 2784592 (E.D. Cal. July 11, 2011) ("Insofar as plaintiff contends there were RESPA violations at the time of the origination of the loan, plaintiff lacks standing as he did not sign the Promissory Note.").

[5] In analyzing the motion to dismiss, the Court may consider the Note, Deed of Trust, Modification Agreement, and correspondence referred to in the Amended Complaint without converting this motion into one for summary judgment. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider the public records without converting a Rule 12(b)(6) motion into a Rule 56 motion." (citation omitted)); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 945 n.5 (M.D. Tenn. 2012) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (quoting *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)).

Instrument only to mortgage, grant and convey that Borrower's interest in the Property . . . [and] (b) is not personally obligated to pay the sums secured by this Security Instrument." (Doc. No. 34-2 at 5). Furthermore, Plaintiff's allegation that she "became a named borrower on the loan" when she signed the Modification Agreement is a legal conclusion, which the Court need not accept as true on a motion to dismiss. *See Ashcroft*, 556 U.S. at 678. Although the Modification Agreement lists Plaintiff as a borrower, it also specifically provides that "all terms and provisions of the Loan Documents, except as expressly modified . . . remain in full force and effect." (Doc. No. 27-1 at 6). The only terms the Modification Agreement expressly modifies are the maturity date, principal balance, interest, and monthly payment schedule. (*Id.* at 3-4). Thus, as Ocwen correctly observes, the Modification Agreement does not alter the terms of the Note to add Plaintiff as a borrower and does not confer borrower status on Plaintiff to satisfy the standing requirements under RESPA.

The allegations regarding the divorce decree or quitclaim deed are insufficient to confer borrower status on Plaintiff to satisfy the standing requirements under RESPA because, in part, they do not allege that Plaintiff became obligated under the loan. The FAC simply alleges that she received 100% title interest in the home (Doc. No. 27 ¶ 14), and a quitclaim deed only conveys a grantor's property interest. *See Del Mazo v. Countrywide Home Loans, Inc.*, No. 3:16-CV-00032, 2017 WL 3083690, at *4 (M.D. Tenn. June 21, 2017), *report and recommendation adopted sub nom. Del Mazo v. Countrywide Home Loans, Inc.*, No. 16-CV-00032, 2017 WL 3049336 (M.D. Tenn. July 19, 2017).

In support of her argument that she has standing under RESPA, Plaintiff discusses four cases: *Frank v. J.P. Morgan Chase Bank, N.A.*, Case No. 15-cv-05811-LB, 2016 WL 3055901 (N.D. Cal May 31, 2016), *Washington v. Green Tree Servs., LLC*, Case No. 1:15-CV-354, 2017

WL 1857258 (S.D. Ohio May 5, 2017), *Washington v. Am. Home Loans*, No. CV 09-08213 DMG (RZx), 2011 WL 11651320 (C.D. Cal. Nov. 12, 2011), and *Farber v. Brock & Scott, LLC*, Civ. No. TDC-16-0117, 2016 WL 5867042 (D. Md. Oct. 6, 2016). The Court, however, does not find these cases persuasive here.

The facts in the instant case are similar to the facts in *Frank*, except for one crucial difference: after the plaintiff's husband passed away, his wife was personally obligated to make the loan payments due to community property law in California. 2016 WL 3055901, at *5. Tennessee is not a community property state. *See Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010). The court's holding in *Frank*, which refers to community debt under California law, is partly based on this crucial difference. *See* 2016 WL 3055901, at *5.

The facts in *Green Tree* are also similar to the facts in this case, except in *Green Tree* the defendant treated the plaintiff as the borrower—directly sending her letters, representing to her that she was the borrower, and referring to the loan as the plaintiff's. 2017 WL 1857258, at *5. Here, however, Plaintiff alleges just the opposite. The FAC alleges that Ocwen never acknowledged her as the borrower nor stated that she had assumed the loan. (Doc. No. 27 ¶ 34). Rather, "Ocwen treated and referred to [her] only as an 'authorized third party.'" (*Id.* ¶ 35).

The court's analysis in *Home Loans* is unpersuasive. In *Home Loans*, the court found the plaintiff obligated on the loan because she signed the deed of trust as a joint tenant with her son and could potentially lose the equitable interest in her property in the event her son defaulted on the loan. 2011 WL 11651320, at *2. However, the court fails to explain how the mere fact that the plaintiff signed the deed of trust obligated her on the loan. Last, *Farber* is distinguishable from this case because *Farber* involved the impact of a post-bankruptcy arrangement on the plaintiffs' borrower status under RESPA—a circumstance not present here. *See* 2016 WL 5867042, at *9.

11

Plaintiff also cites to the Mortgage Servicing Rules regarding successors in interest, which went into effect in April 2018, to support of her position that she is a borrower under RESPA. However, the Court declines to find these new rules controlling here, as doing so would constitute an impermissible application of regulations not in effect at the time of foreclosure in this case or the events preceding the foreclosure. *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 298 (6th Cir. 2015) (affirming dismissal of plaintiff's RESPA claim where the relevant regulation became effective after foreclosure on the property and holding that the regulation's effective date reflects an intent not to apply it to conduct occurring prior to that date). Therefore, the Court dismisses Count 1 because Plaintiff does not have standing to bring a RESPA claim.

### 2. Wrongful Foreclosure Resulting from Violations of HAMP (Count 2)

Ocwen argues Count 2 should be dismissed because courts have not recognized private causes of action associated with HAMP. In response, Plaintiff appears to assert that Ocwen has misconstrued her allegations in Count 2, which instead allege RESPA violations for servicing errors based on HAMP infractions. Because the Court finds that Plaintiff does not have standing under RESPA, and Plaintiff states Count 2 is based on RESPA, the Court also dismisses Count 2.

### 3. Wrongful Foreclosure Resulting from Failure to Recognize Assumption Under Garn-St. Germain (Count 8)

Plaintiff's last federal claim appears to be based on the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3 ("Garn-St. Germain") and RESPA. However, Garn-St. Germain does not create a private right of action for damages. *See Bantom v. Bayview Loan Servicing*, Case No. 17-cv-12121, 2017 WL 6422068, at *4 (E.D. Mich. Dec. 18, 2017); *Turman v. Wells Fargo Bank, N.A.*, No. 3:15-cv-1119, 2016 WL 5467947, at *3 (M.D. Tenn. Sept. 29,

2016). To the extent Plaintiff alleges a RESPA claim in Count 8, the Court finds that such a claim fails because, as previously discussed, Plaintiff does not have standing to bring a RESPA claim.[6]

### 4. Remaining Claims (Counts 3, 4, 5, 6, 7, 9, 10)

The Court has dismissed all federal claims against Ocwen. Plaintiff's remaining claims against Ocwen are based on state law: (1) breach of contract (Counts 3, 4, 9); (2) promissory estoppel (Count 5); (3) fraud (Count 6); (4) negligent misrepresentation (Count 7); and (5) infliction of emotion distress (Count 10).[7]

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because the Court has dismissed all claims over which it had original jurisdiction, and the aforementioned factors weigh in favor of declining jurisdiction over Plaintiff's state law claims,

---

[6] Because the Court dismisses Count 8 on these grounds, it declines to address Ocwen's additional arguments that: (1) Garn-St. Germain is inapplicable because the FAC does not assert foreclosure was the result of a due-on-sale clause; and (2) Garn-St. Germain's exceptions, which preclude enforceability of a due-on-sale clause to certain transferees, do not create an automatic right in those transferees to assume another party's obligations on a loan.

[7] Plaintiff does not allege any claims against Helson.

the Court declines to exercise supplemental jurisdiction over those claims and dismisses them without prejudice.[8] Plaintiff may refile them in a Tennessee state court.

### B. Helson's Counterclaim, Crossclaim, and Third-Party Complaint

BNYM and Ocwen move to dismiss all of Helson's claims against them. Helson's cross-claim and third-party complaint solely allege state law claims against BNYM and Ocwen: negligent misrepresentation, declaratory judgment regarding rights to the Home, breach of seisen/rescission, quantum meruit/unjust enrichment/detrimental reliance, and breach of contract. (See Doc. No. 24 at 6-12). In light of the authority discussed above, the Court declines to exercise supplemental jurisdiction over Helson's claims against BNYM and Ocwen and dismisses them without prejudice. Helson may refile them in a Tennessee state court.

The Court also dismisses Helson's counterclaims for declaratory judgment, cloud on title, and quantum meruit/unjust enrichment/detrimental reliance against Keen without prejudice for the same reasons. Helson may also refile these claims in a Tennessee state court.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** BNYM and Ocwen's Motion to Dismiss Amended Complaint, and Cross-Claim, and Third-Party Complaint. (Doc. No. 34). Counts 1, 2, and 8 in the FAC are dismissed with prejudice. Counts 3, 4, 5, 6, 7, 9, and 10 are dismissed without prejudice, to be filed, if Plaintiff so chooses, in a Tennessee state court. Helson's counterclaim, crossclaim, and third-party complaint are also dismissed without prejudice, to be filed, if Helson so chooses, in a Tennessee state court.

---

[8] The sole basis for subject matter jurisdiction provided in the FAC is federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff does not assert diversity jurisdiction.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE